IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVEN BAER,
    Plaintiff,

v.                                              Case No: 5:11cv248/MP/CJK

ROWLAND SAPP, et al.,
    Defendants.
_____

REPORT AND RECOMMENDATION

    Plaintiff, a former state prisoner proceeding *pro se* and *in forma pauperis*, initiated this action on July 20, 2011, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). On November 9, 2011, the Court issued an order warning plaintiff that the facts presented in his complaint failed to state a viable claim for relief under § 1983 as to the named defendants. (Doc. 9). The Court provided plaintiff an opportunity to clarify his allegations in an amended complaint, but plaintiff has declined to amend. (Doc. 10). Based on a second review of plaintiff's allegations, the Court concludes that plaintiff's complaint fails to state a plausible § 1983 claim, and that this case should be dismissed.

BACKGROUND

    Plaintiff, now a resident of Wisconsin, is suing two correctional officers at Apalachee Correctional Institution ("Apalachee CI") in Sneads, Florida: Officer

Rowland Sapp and Captain Paul Abel.  Plaintiff claims the defendants violated his constitutional rights with regard to a disciplinary conviction plaintiff received in 2008.  Plaintiff alleges the following facts in support of his claims.  On August 4, 2008, plaintiff wrote a letter to the Florida Department of Health complaining of overcrowding at Apalachee CI.  (Doc.1, p. 2 ¶ 1).  The Department of Health forwarded plaintiff's letter to the Florida Department of Corrections ("FDOC") on August 13, 2008.  (*Id*. ¶ 2).  On August 15, 2008, Sergeant Hartsfield, an Apalachee CI security officer, questioned plaintiff about the letter.  (*Id*., pp. 2-3 ¶ 2).  On August 17, 2008, Assistant Warden Atkins questioned plaintiff about the letter.  (*Id*., p. 3 ¶ 3).  On August 18, 2008, Assistant Warden Atkins issued plaintiff a disciplinary report ("DR") for lying to staff.  (*Id*. ¶ 4).  Plaintiff was convicted and sentenced on August 19, 2008 to 60 days disciplinary squad, 60 days canteen restriction, the loss of a good adjustment transfer, and the loss of his law library job.  (*Id*. ¶ 5).  On August 26, 2008, plaintiff wrote the FDOC Inspector General's Office ("IG's Office") complaining that he believed Atkins' DR was improper and motivated by retaliation.  (*Id*.).  Plaintiff does not challenge Atkins' DR here.

On September 10, 2008, plaintiff was called to the Captain's Office to meet with defendant Sapp.  (*Id*., p. 4 ¶ 8).  Defendant Sapp strip-searched plaintiff and ordered plaintiff to provide a urine sample for drug testing.  (*Id*., ¶ 9).  Plaintiff claims Sapp's behavior was "suspicious," because Sapp stared plaintiff down and repeatedly asked plaintiff if plaintiff knew the penalties for failing to provide a sample.  (*Id*. ¶ 9).  Plaintiff alleges that he produced two separate samples, one which filled the sample cup halfway, and one which filled the cup "to the threads."  (*Id*., ¶¶ 11-15).  After plaintiff gave Sapp the second cup, which was full, defendant Sapp asked

plaintiff, "Where did you drab that up?" (*Id*. ¶ 15).  Plaintiff responded that his sample was legitimate.  (*Id*.).  According to plaintiff, "Mr. Sapp took the cup from Plaintiff and began examining it.  Plaintiff finished getting dressed.  Officer Sapp walked over to Plaintiff, holding up the sample cup.  There was now only a small amount of urine in the cup.  Defendant stated, 'That little bit right there – that's not enough.'" (*Id*. ¶¶ 16-17).  Plaintiff asked defendant Sapp what happened to the rest of the sample.  (*Id*. ¶ 18).  Sapp responded "You have to give me 30 milliliters of urine.  Are you refusing?"  Plaintiff replied that he was not refusing – that he had given defendant Sapp two sufficient samples.  (*Id*. ¶ 18).  Defendant Sapp "pretended not to know what plaintiff was talking about," and placed plaintiff in handcuffs.  (*Id*. ¶ 19).  While escorting plaintiff to confinement, plaintiff and Sapp passed an officer who commented, "He likes to write things up," to which Sapp responded, "Yea, he already told me he was going to write his way out of this one."  (*Id*. ¶ 20).  Defendant Sapp issued plaintiff a DR for refusing to submit to a substance abuse test.

 Plaintiff wrote a letter to the IG's Office complaining about the incident with defendant Sapp.  IG's Office staff interviewed plaintiff on September 16, 2008.  (*Id*. ¶¶ 21-22).  Plaintiff told the inspectors that he believed Sapp's conduct was motivated by retaliation for plaintiff's "activities as a law clerk and the Department of Health complaint."  (*Id*. ¶ 23).  Plaintiff learned at this meeting with inspectors that the drug test was "for cause" and was not random.  (*Id*. ¶ 22).

 On September 18, 2008, a disciplinary hearing was held on defendant Sapp's disciplinary charge.  (*Id*. ¶ 24).  Plaintiff alleges that he (plaintiff) was denied a copy of the incident report containing the reason, i.e., "cause," for the drug test.  The stated reason for denying plaintiff the report was the need for confidentiality.  Plaintiff was

*Case No: 5:11cv248/MP/CJK*

convicted of the infraction and sentenced to 60 days disciplinary confinement, loss of 180 days gain time, and loss of visitation for 2 years. (*Id*.). Plaintiff appealed and, on October 14, 2008, the finding of guilt was overturned. (*Id*. ¶ 25). Defendant Sapp rewrote the DR. (*Id*., p. 7 ¶ 26). Plaintiff was served with the re-written DR on October 16, 2008. A hearing was held that same day. Plaintiff renewed his request for the incident report. A member of the disciplinary hearing team read the incident report. (*Id*. ¶ 27). The incident report stated that defendant Captain Abel was notified of a telephone call in which plaintiff stated, "it is a miracle that I haven't been drug tested in three years or I would be in confinement." (*Id*. ¶ 27). The incident report further stated that Captain Abel later saw plaintiff with red eyes and pacing. (*Id*.). The disciplinary hearing team convicted plaintiff of the re-written charge. As a result of the conviction, plaintiff states he lost gain time and served 61 days in disciplinary confinement. (*Id*. ¶¶ 31, 39; *see also* p. 11 ¶ 2). Plaintiff appealed the conviction on November 19, 2008, by filing a formal grievance with the Warden. In his response denying the grievance, Assistant Warden Atkins reported that he interviewed Captain Abel about the incident report and that Abel provided the following additional information: (1) plaintiff made the alleged remark in a telephone call made on August 9, 2008, and (2) Abel observed plaintiff with red eyes and pacing during Abel's interview with plaintiff concerning the remark. (*Id*. ¶ 28). Plaintiff was provided a copy of the transcript of his August 9, 2008 telephone call. Plaintiff states that "[t]he alleged suspicious statement was about Plaintiff's legal challenge to the drug testing procedure." (*Id*. ¶ 30). Plaintiff further states he never spoke to defendant Abel at any time, and that Abel's statements made in support of the incident report were false. (*Id*. ¶ 29).

Based on the foregoing allegations, plaintiff raises a First Amendment retaliation claim, arguing that defendants Sapp and Abel "falsified" the DR in retaliation for plaintiff's complaints to the Health Department and IG's Office. (*Id*., pp. 10-11 ¶ 1). Plaintiff further claims defendants Sapp and Abel violated plaintiff's substantive due process rights by "producing and maintaining a false disciplinary report against Plaintiff," which denied plaintiff, among other things, his right to early release through gain time. (*Id*., p. 11 ¶ 2). Lastly, plaintiff claims he was denied procedural due process in the disciplinary proceeding because: (1) plaintiff was not provided adequate notice of the re-written charge; (2) the original and re-written charges were vague; (3) Captain Abel falsified the incident report that led to the drug test; (4) plaintiff was deprived of the incident report at the disciplinary hearing on the original, overturned charge; (5) Captain Abel's additional statements concerning the incident report were false and were not provided to plaintiff until after the disciplinary hearing on the re-written charge; and (6) the disciplinary conviction was not supported by "some evidence" as required by *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985). (*Id*., pp. 11-12 ¶¶ 3-4).

Plaintiff seeks recovery for the mental and emotional anguish he suffered as a result of the allegedly harsh conditions of disciplinary confinement, and for being required to spend 71 days more in prison than he otherwise would have without the disciplinary conviction. (*Id*., p. 10 ¶ 39). As relief, plaintiff seeks $125,000 in compensatory damages and $125,000 in punitive damages against each defendant. (*Id*., p. 12).

DISCUSSION

Legal Standards Governing Dismissal

Because plaintiff is proceeding *in forma pauperis*, the Court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The Court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, however, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the Court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only well pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[1] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009) (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true"); *see also Weissman v. Nat'l Ass'n of Sec. Dealers*, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) ( "[A]ny conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal.") (citing *Associated Builders, Inc.*, 505 F.2d at 99).

As the Supreme Court reiterated in *Ashcroft, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.

The complaint is also subject to dismissal under Rule 12(b)(6) if the allegations – on their face – show that an affirmative defense bars recovery on plaintiff's claims. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle).

Application of Rule 12(b)(6) Standard to Plaintiff's Complaint

In order to prevail in a civil rights action under § 1983, plaintiff must establish that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or federal law. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). First Amendment retaliation claims arising in the prison context are analyzed under the three-part test set forth in *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). To prevail on a retaliation claim, the inmate must establish: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech." *Id.* at 1276. Mere "general attacks" upon a defendant's motivations are not enough – the plaintiff must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (citations omitted).

Here, plaintiff's retaliation claims against defendants Sapp and Abel fail on the element of causation. The only fact plaintiff offers to support his claims that Sapp's

and Abel's actions were motivated by retaliation are that the defendants' conduct occurred after plaintiff wrote the Department of Health, after plaintiff complained to the IG's Office about Warden Atkins' alleged retaliatory DR, and after plaintiff filed a medical grievance against one Nurse Cox. Even accepting this chronology as true, plaintiff's allegations fail to raise plaintiff's conclusion of a retaliatory motive above the speculative level. Plaintiff's allegations do not reasonably support an inference that defendants Sapp and Abel were aware of plaintiff's letter to the Department of Health, complaint to the IG's Office, or medical grievance against Nurse Cox. Further, even if the defendants' awareness could be inferred, plaintiff fails to allege facts from which it could reasonably be inferred that plaintiff's complaints about those <u>other</u> prison officials motivated Sapp and Abel to retaliate. As plaintiff's assertions do not raise a right to relief against defendants Sapp and Abel above the speculative level, plaintiff's retaliation claims should be dismissed. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965; *see also e.g., Smith v. Fla. Dep't of Corr.*, 375 F. App'x 905, (11th Cir. 2010) (holding that state prisoner's conclusory and speculative allegations of a retaliatory motive in preparing disciplinary report based on his refusal to comply with an order to leave infirmary following a broken pelvis were insufficient to state a § 1983 claim for First Amendment retaliation); *Williams v. Brown*, 347 F. App'x 429 (11th Cir. 2009) (dismissing prisoner's retaliation claims against two correctional officers as conclusory, where prisoner merely alleged that the two officers transferred him after prisoner filed grievances against a third officer, but

failed to allege facts associating the two officers with a retaliatory motive arising from the grievances).[2]

Plaintiff's due process claims are also subject to dismissal. Plaintiff claims defendants Sapp and Abel violated plaintiff's substantive due process rights by issuing plaintiff a "false" DR for refusing to submit to a substance abuse test, thereby denying plaintiff his "right" to early release through gain time. (*Id.*, p. 11 ¶ 2). Plaintiff further claims the defendants violated his procedural due process rights with regard to the disciplinary proceedings for refusing to submit to a substance abuse test because: (1) plaintiff was not provided adequate notice of the re-written charge; (2) the original and re-written charges were vague; (3) defendant Abel falsified the incident report that led to the drug test; (4) plaintiff was deprived of the incident report at the disciplinary hearing on the original, overturned DR; (5) defendant Abel's additional statements concerning the incident report were false and were not provided to plaintiff until after the disciplinary hearing on the re-written DR; and (6) the disciplinary conviction was not supported by "some evidence." With the exception of Subclaim (4), all of the foregoing claims imply the invalidity of plaintiff's disciplinary conviction on the re-written charge – a conviction that resulted in plaintiff losing gain time and "leav[ing] prison 71 days later than he would have otherwise." (Doc. 1, p. 11 ¶ 39).

In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held:

> [T]o recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness

---

[2]The undersigned cites unpublished opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

> would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87, 114 S. Ct. at 2372. If the § 1983 action is brought prior to the invalidation of the challenged conviction or sentence, the action must be dismissed as premature. *Id*. at 487, 114 S. Ct. at 2372. The Supreme Court has applied *Heck* to prisoners' claims challenging prison disciplinary actions. *Edwards v. Balisok*, 520 U.S. 641, 643-649, 117 S. Ct. 1584, 1586-89, 137 L. Ed. 2d 906 (1997) (holding that *Heck* applies to claims for relief that necessarily imply the invalidity of disciplinary determinations affecting the duration of time to be served). *Heck* applies even though the prisoner seeks monetary damages and not the reinstatement of lost good-time credits flowing from the disciplinary action. *Id.*, 520 U.S. at 646. If a judgment in plaintiff's favor would be "at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence" *Muhammad v. Close*, 540 U.S. 749, 754-55, 124 S. Ct. 1303, 1306, 158 L. Ed. 2d 32 (2004), plaintiff's claims must be dismissed unless plaintiff demonstrates that the disciplinary conviction has been invalidated. *Id.*; *see also Heck*, 512 U.S. at 487, 114 S. Ct. at 2372.

Plaintiff's Subclaims (1), (2), (3), (5) and (6) clearly stray into *Heck* waters, because they necessarily imply the invalidity of plaintiff's disciplinary conviction – a conviction that resulted in the loss of gain time and the postponement of plaintiff's release date. In response to the Court's order providing plaintiff an opportunity to amend, plaintiff effectively concedes that he has not obtained a favorable termination of his disciplinary conviction, but argues that *Heck* does not apply because he has

been released from prison and the DR conviction no longer affects the duration of his sentence. (Doc. 9). Plaintiff's release from custody does not release him from *Heck*'s favorable termination requirement. *See, e.g., Heck*, 512 U.S. at 490 n. 10 (opinion for the Court) (stating that an action is barred even after the plaintiff has completed service of his sentence). Although concurring and dissenting opinions in *Spencer v. Kemna*, 523 U.S. 1, 19, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) question the applicability of *Heck* to an individual who has no recourse under the habeas statute, *see id.* at 19-20 (Souter, J., concurring for four justices) (stating that an action is not barred if the plaintiff cannot seek relief from the conviction through habeas because he is not in custody), and *id*. at 25 n. 8 (Stevens, J., dissenting) (agreeing with Justice Souter on this point), these opinions do not affect the undersigned's conclusion that *Heck* applies to plaintiff's due process claims.

The Supreme Court has admonished the lower federal courts "to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court 'the prerogative of overruling its own decisions.'" *Figueroa v. Rivera*, 147 F.3d 77, 81 n. 3 (1st Cir. 1998) (citing *Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)).[3] Further, unlike the circumstances discussed in *Spencer,* it was not impossible as a matter of law for plaintiff to satisfy *Heck*'s favorable termination

---

[3]The Eleventh Circuit has not explicitly decided whether *Heck* bars § 1983 suits by plaintiffs who are not in custody and thus for whom federal habeas relief is not available. In dicta and unpublished opinions, the court has expressed mixed views on the subject. *See Domotor v. Wennet*, 630 F. Supp. 2d 1368 (S.D. Fla. 2009) (discussing Eleventh Circuit and district court opinions). There is a circuit split on the issue of whether *Spencer*'s dicta overrides *Heck. See Molina-Aviles v. District of Columbia*, — F. Supp. 2d —, 2011 WL 2783853, at *3 n. 5 (D. D.C. June 23, 2011) (citing cases).

requirement. Plaintiff had two years in between his 2008 disciplinary conviction and his 2010 release from custody in which to seek judicial review of his disciplinary conviction. Indeed, plaintiff challenged his disciplinary conviction in this Court in a § 1983 action filed prior to his release from custody. *See Baer v. McNeil*, Case Number 5:09cv222. After the Court advised plaintiff in an amend order that his claims would be barred by *Heck*, plaintiff voluntarily dismissed his suit. (Case No. 5:09cv222, doc. 23 and doc. 48, pp. 4-6 (referencing plaintiff's admission in his first amended complaint that he was pursuing judicial review of the disciplinary conviction)). The principles underlying *Heck*'s favorable termination requirement apply despite plaintiff's release. The Court should therefore dismiss as premature plaintiff's five due process subclaims challenging plaintiff's disciplinary conviction that resulted in the loss of gain time.

Plaintiff's remaining due process claim (Subclaim (4)) – that plaintiff was denied Captain Abel's incident report at the <u>original</u> disciplinary hearing – does not necessarily imply the invalidity of the disciplinary conviction that resulted in the loss of gain time. The claim is nonetheless subject to dismissal on a different basis.

To state a procedural due process claim, a plaintiff must establish: (1) that he was deprived of a constitutionally protected liberty or property interest, and (2) that he was not provided with a constitutionally adequate process to contest the deprivation. *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006). In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995) the Supreme Court rejected the notion that any state action taken for a punitive reason encroaches upon a liberty interest protected under the Due Process Clause. The Court held that in the prison context, due process liberty interests "will generally be limited

to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force [such as in the case of involuntary transfer to a mental hospital or involuntary administration of psychotropic drugs], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* 515 U.S. at 484-85, 115 S. Ct. at 2300 (citations omitted). The Court concluded that discipline by prison officials in response to misconduct "falls within the expected perimeters of the sentence imposed by a court of law," *id.*, 515 U.S. at 485, 115 S. Ct. at 2301, and that the discipline to which the prisoner in *Sandin* was exposed – 30 days in segregated confinement similar to solitary confinement – did not present the type of "atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*, 515 U.S. at 485-86, 115 S. Ct. at 2301. "After *Sandin*, . . . the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223, 125 S. Ct. 2384, 2394, 162 L. Ed. 2d 174 (2005) (quotations omitted).

Here, plaintiff does not allege that he suffered any hardship as a result of the <u>original</u>, <u>overturned</u> DR. Plaintiff mentions spending 19 days in administrative confinement "while waiting for a hearing and after the first report was overturned by the Warden," (doc. 1, p. 8 ¶ 31), but he does not allege that the conditions of administrative confinement were particularly harsh. Plaintiff further states that he spent 61 days in disciplinary confinement, but that (or at least 60 days of it) was part of the sentence on plaintiff's second, re-written DR, not the overturned DR. (*Id*.).

Even if plaintiff's complaint could be liberally construed as suggesting that plaintiff spent a few extra days in disciplinary confinement as a result of the original, overturned DR, plaintiff's allegations do not give rise to a plausible due process claim. Under the guidance of *Sandin*, the Eleventh Circuit has held that a Florida prisoner's confinement in administrative segregation for two months does not impose an atypical and significant hardship on the prisoner. *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998). In recent unpublished opinions, the Eleventh Circuit has held that a Florida prisoner's short sentences of disciplinary confinement do not trigger due process protections. *McCiskill v. Deidrich*, No. 10-11431 (11th Cir. Aug. 4, 2010) (dismissing as frivolous an appeal challenging the dismissal of a prisoner's § 1983 suit raising a due process challenge to a disciplinary conviction that resulted in 30 days of disciplinary confinement; plaintiff did not allege he lost gain time, and failed to allege any facts which could be liberally construed to show that the disciplinary confinement was a major disruption to his environment as compared to placement in the general population); *Smith v. Reg'l Dir. of Fla. Dep't of Corr.*, 368 F. App'x 9, 13 (11th Cir. 2010) (same); *Smith v. Sec'y, Fla. Dep't of Corr.*, 358 F. App'x 60, 63 (11th Cir. 2009) (holding that although prisoner asserted a number of ways in which disciplinary confinement differed from being in the general prison population, he also conceded that the conditions in disciplinary confinement essentially were the same as the conditions in administrative confinement. Thus, the prisoner did not have a liberty interest in being free from disciplinary confinement, and the district court correctly found that the prisoner failed to state due process claim); *Moulds v. Bullard*, 345 F. App'x 387, 396 (11th Cir. 2009) (inmate's deprivation of one meal per day and deprivation of a mattress for half of each day

during 201 days in segregation did not constitute such a "dramatic departure" from ordinary prison life as to give rise to a protected liberty interest); *Van Taylor v. McSwain*, No. 08-12238, 2009 WL 1636808, at *2 (11th Cir. June 12, 2009) ("Short sentences of disciplinary confinement do not tend to present the kind of 'atypical' and 'significant deprivation' to implicate the Due Process Clause absent a showing that the prisoner's isolation worked a major disruption in the inmate's environment when compared to his placement in the general population.").

Here, plaintiff characterizes the conditions of disciplinary confinement as "beyond reprehensible and shocking to the conscience," (doc. 1, p. 8 ¶ 32), but that is a gross exaggeration. The actual conditions, according to plaintiff, involved: (1) confinement to a cell for 23 ½ hours per day, (2) deprivation of books, radio and other property, (3) an allowance of two sheets and a thin blanket, (4) "difficulty" in obtaining soap, a toothbrush, toothpaste and toilet paper, (5) three showers per week, (6) deprivation of natural sunlight due to coverings on exterior cell windows, (7) weight loss, (8) loss of prison job, (9) ineligibility for gain time while in confinement and (10) deprivation of television, socialization with other prisoners, outdoor recreation, visits to the law library and telephone visitation. (Doc. 1, pp. 8-9 ¶¶ 32-37). These facts do not arguably suggest that any small amount of time plaintiff may have spent in disciplinary confinement as a result of the original, overturned DR (as opposed to the re-written DR) was so severe that it essentially exceeded the sentence imposed by the court, or worked a major disruption to plaintiff's environment as compared to placement in the general population. *Sandin*, 515 U.S. at 485-86, 115 S. Ct. at 2301-02. Plaintiff's allegations relating to the overturned DR fail to state a plausible due process claim.

## CONCLUSION

It appears beyond doubt that plaintiff's complaint fails to state a plausible claim for relief under § 1983. Because plaintiff has declined his opportunity to amend, the Court should dismiss this case without further opportunity for amendment.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's retaliation claims be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That plaintiff's due process claims challenging the re-written DR and subsequent disciplinary conviction for refusing to submit to a substance abuse test be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), subject to plaintiff satisfying *Heck*'s favorable termination requirement.

3. That plaintiff's due process claim challenging the original DR and overturned disciplinary conviction for refusing to submit to a substance abuse test be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii).

4. That the clerk be directed to close the file.

At Pensacola, Florida this 29th day of December, 2011.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).