IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVEN BAER,

    Plaintiff,

v.                                                                 CASE NO. 5:11-cv-00248-MP-CJK

PAUL ABEL,
ROWLAND SAPP,

    Defendants.

_____/

**O R D E R**

This matter is before the Court on Doc. 11, the Report and Recommendation of the Magistrate Judge, recommending that this case be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The plaintiff has filed objections, Doc. 12, which the Court has reviewed. The Court has made a *de novo* determination of those portions of the Report and Recommendation to which objection is made. 28 U.S.C. § 636(b)(1). For the reasons which follow, the Report and Recommendation is adopted and this case dismissed.

At the time of the events in this case, Plaintiff was a prisoner at Apalachee Correctional Institution, West Unit. He has since been released from incarceration. The two defendants were a correctional officer captain and correctional officer, respectively, at that institution. Below are the facts as alleged by the Plaintiff.[1] The incidents that gave rise to this suit began when Plaintiff wrote a letter to the Florida Department of Health on August 4, 2008. In it, he alleged

---

[1] Since "Federal Rule of Civil Procedure 12(b)(6) standards govern [a court's] review of dismissals under section 1915(e)(2)(B)(ii)," Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir.1997), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

that his and other dormitories at Apalachee Correctional Institution- West Unit were overcrowded in violation of Florida Administrative Code (F.A.C.) Chapter 64E- 26.007(3). He requested that the Health Department inspect and take action to correct the overcrowding. The Department of Health forwarded Plaintiff's letter to the Florida Department of Corrections on August 13, 2008.

Plaintiff was called to the front of II dorm at 4:00 p.m. on August 15, 2008, by Sergeant Hartsfield, Apalachee C.I.'s safety officer. At count time and while the rest of the dorm watched, Plaintiff and Sgt. Hartsfield discussed the bunk spacing and administrative codes. They were unable to reach an agreement on the issue, and Sgt. Hartsfield left 15 minutes later. Plaintiff was ordered to report to the Captain's office on August 17, 2008 at 9:00 a.m. There, Plaintiff was questioned by Assistant Warden Atkins about the typing of the letter. Plaintiff responded that his parents had typed it for him. During this conversation, Mr. Atkins expressed no interest or concern about the substance of the letter, which was that the law was being violated and that inmates were being subjected to illegal conditions.

Plaintiff was told not to report to his job in the Law Library on August 18, 2008, by his dorm officer. In the afternoon he was served with a disciplinary report (DR) for lying to staff. Mr. Atkins was the charging staff member, and had reviewed Plaintiff's telephone conversations with his parents for the last several weeks and found a discrepancy with Plaintiff's statement. As a result of Plaintiff's DR for lying to staff, he was sentenced on August 19, 2008 to 60 days disciplinary squad, 60 days canteen restriction, and loss of his good adjustment transfer. He also lost his job in the Law library.

Plaintiff wrote to the Inspector General's (IG) Office on or about August 26, 2008, as he believed his DR was improper and had a retaliatory motive. He continued to express his

intention to file for a writ of mandamus in his phone conversations and in the letter to the IG. Plaintiff asked for help from the IG's Office as his DR Squad officer, Officer Johnson, was denying him access to the law library by stating that he could not go unless he had a deadline. This completely denied Plaintiff access and the ability to pursue a claim, and Mr. Johnson made it known the matter was not open for discussion.

In the meantime, Plaintiff filed a medical grievance on or about August 22, 2008, because he was sunburned from his work on DR Squad and Nurse Cox denied him sunscreen at sick call. Plaintiff was called to report to the Captain's Office on September 10, 2008, at 1: 15 p.m. Officer Sapp was present and told him to come inside.   Officer Sapp strip-searched Plaintiff and gave him a cup to provide a urine sample for a drug test. The reason for the test was not disclosed at this time. Plaintiff reports that "Officer Sapp's behavior was suspicious as he was conducting the test. He stared down Plaintiff at several points throughout the process. Officer Sapp repeatedly asked if Plaintiff knew what the penalties were if he couldn't urinate." Doc. 1, p. 4. Plaintiff was able to provide a urine sample that was slightly over halfway full. He asked Officer Sapp if this was sufficient, as Mr. Sapp had not previously told him how much to give. Mr. Sapp stated, "Is that all you got?" Plaintiff stated that it was all he could provide at the moment.

Plaintiff was allowed two cups of water over the next hour as is required by the inmate drug testing procedure. Officer Sapp led Plaintiff back into the bathroom, where he was to resume providing a sample. Plaintiff noticed that the urine sample given earlier and set on the urinal was poured out. He believed this to be a violation of procedure.   Plaintiff was providing a second sample when Officer Sapp stepped out of the room to supervise two other inmates. This was a violation of the testing procedure, which states that inmates must be directly supervised (or

watched in mirrors) while the test is in progress. Plaintiff filled the cup to the threads and called for Officer Sapp.  Mr. Sapp entered and said, "What are you yelling about?" Plaintiff showed him the full cup, and Defendant said, "Where did you drab that up?"  Plaintiff told Officer Sapp that he had given a legitimate sample.  Mr. Sapp took the cup from Plaintiff and began examining it. Plaintiff finished getting dressed.  Officer Sapp walked over to Plaintiff, holding up the sample cup. There was now only a small amount of urine in the cup. Defendant said, "That little bit right there - that's not enough."  Plaintiff asked Mr. Sapp what happened to the rest of the sample. Plaintiff told Officer Sapp that he had given him a full cup.  Defendant Sapp stated, "You have to give me 30 milliliters of urine. Are you refusing?"  Plaintiff replied that he was not refusing, had given Defendant a sample that was full to the threads, and one that was over halfway full before that.   Defendant Sapp pretended not to know what Plaintiff was talking about, and placed him in handcuffs.

While escorting Plaintiff to confinement, Plaintiff and Officer Sapp encountered Officer Johnson (Plaintiff's DR Squad officer) in the visitation park.  Upon seeing Plaintiff in handcuffs, Mr. Johnson said, "He likes to write things up!"  Officer Sapp remarked, "Yeah, he already told me he was going to write his way out of this one." Mr. Johnson replied, "And he'll put a lawsuit on you!" Plaintiff alleges that he made none of these statements.  Plaintiff was placed in administrative confinement pending his disciplinary hearing at about 2:30 p.m. on September 10, 2008.

Plaintiff wrote a letter to his father describing the situation and his father called Inspector General Paul Decker.  The Inspector General's office is responsible for administering the drug testing program, as well as conducting criminal investigations of staff and inmates.  Inspectors Clark and Lancaster interviewed Plaintiff on September 16, 2008 with regard to Plaintiff's

Case 5:11-cv-00248-MP-CJK   Document 16   Filed 09/26/12   Page 5 of 12

Page 5 of 12

allegations. The Inspectors questioned Plaintiff about the incident and pulled up a report on their computer. They asked why Plaintiff sent money to another inmate, but never gave any other justification for the test. It was at this meeting that Plaintiff learned that the test was "for cause", and not random. Plaintiff explained to the Inspectors what he felt the motive for Officer Sapp's actions were - the Plaintiff's activities as a law clerk and the Department of Health complaint. He gave a sworn statement and the Inspectors left. See Case No. IG 08-1- 5713.

A hearing was held on September 18, 2008, in which Plaintiff was found guilty of refusing to submit to a substance abuse test. The incident report containing the reason for the test was denied to Plaintiff on the grounds of confidentiality. Plaintiff was sentenced to 60 days disciplinary confinement, loss of 180 days gain time, and loss of visitation for 2 years. See log # 101-080689. Plaintiff claims he "actually lost a total of 250 days gain time due to 6 months (60 days) withholding and the loss of the month of the report (10 days)." Plaintiff appealed, and the finding of guilt was overturned by Warden Palmer on October 14, 2008. See grievance log # 0809-102-173.

The disciplinary report was rewritten by Officer Sapp and served again on October 16, 2008. Inspectors Clark and Lancaster were called by Plaintiff as witnesses, both of whom stated that they were not present at the test and did not have any information. Plaintiff was accused in the rewritten DR of having red eyes and pacing. The DR did not state who observed him like this. See log #101-080764. At the October 16 hearing, Plaintiff also renewed his request for the incident report, from either the original or rewritten DR's. Classification Officer Maybardy read from it, and it stated that Captain Abel was notified of a phone call where Plaintiff said "it is a miracle that I haven't been drug tested in three years or I would be in confinement." This was the first notice Plaintiff had that Captain Abel was involved with his disciplinary report, and

came over a month after Plaintiff was charged. The person who supposedly saw Plaintiff with red eyes and pacing was still not disclosed at the hearing. Later Plaintiff discovered that it was alleged by Captain Abel in the incident report (No. 08-09-11-1384).

Plaintiff was again found guilty and again appealed.  His grievance was denied on November 19, 2008, by Assistant Warden Atkins.  Mr. Atkins stated in the response that he interviewed Captain Abel about Plaintiff's grievance.  Defendant Abel told Mr. Atkins that he was informed of a phone call Plaintiff had made on August 9, 2008 at 14:23:28 in which Plaintiff had made the suspicious statement discussed above.  Mr. Abel then claimed he called Plaintiff to his office to interview him about said statement, and Plaintiff had red eyes and was unable to stop pacing around to answer his questions.  He claimed this was unusual based on his past experiences of speaking with Plaintiff.  See grievance log # 0811-102-002.

Plaintiff claims he never spoke to Captain Abel on September 10, 2008, and was never interviewed by him about any conversation.  Plaintiff claims, in fact, that he never has spoken to Captain Paul Abel at any time.  Plaintiff was presented with a transcript of the phone conversation which provided the pretext for the drug test at his second meeting with Inspector Clark on or about February 2, 2009.  The Plaintiff claims that upon review, he realized that the "allegedly suspicious statement was about Plaintiff's legal challenge to the drug testing procedure." Doc. 1, p. 8.  Inspector Clark also told Plaintiff that it sounded like "something you were filing."

Plaintiff claims he actually served 61 days of disciplinary confinement and 19 days of administrative confinement, for a total of 80 days, on the DR.  Plaintiff attempts to show that the time in disciplinary confinement was an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293,

2300 (1995) with the following description:

> Plaintiff experienced conditions in confinement that were beyond reprehensible and shocking to the conscience. He was confined at least 23 and ½ hours a day in a 9x11 cell with a cellmate. There he was deprived of his books, radio, and most of his property and left with nothing to do but stare at the walls. He was not provided with adequate clothing or bedding when the temperature dropped to the 40s and 50s in late October and November, only two sheets and a thin blanket that had to be made up on the bed by 7:00 a.m.
>
> Plaintiff was also without hygiene items for part of his confinement time, due to difficulty in obtaining soap, toothbrush, toothpaste, and toilet paper from officers. Showers were only given three times a week and might not be given then if there was a staff shortage.
>
> At the East Unit, where Plaintiff spent over half of his confinement time, the windows are painted over causing total sensory deprivation. Painting over cell windows to block out light, as well as a view to the outside, served no legitimate penological objective and only served to inflict punishment. Additionally, inmates were not allowed to look through the cell door window into the hallway or quad, meaning an inmate was limited to the walls in front of him. This caused Plaintiff significant distress and psychological harm and aggravated his bipolar disorder. Plaintiff saw a psychiatrist and started treatment with Prozac during this time.
>
> Plaintiff lost a significant amount of weight during the 80 days he spent in confinement. He believes he lost 14 pounds, dropping from 188 to 174. Plaintiff will verify this through discovery.
>
> Plaintiff was deprived of the opportunity to visit with his father while he was in confinement. Plaintiff's father moved to Eau Claire, Wisconsin around mid-December of 2008, making visits very difficult and expensive. Plaintiff never received another visit in his remaining 2 years and 8 months in the Department of Corrections. Before Defendants' DR, Plaintiff had visited with his mother and father about every four months.
>
> Due to the circumstances of his confinement, Plaintiff was also not able to enjoy the limited liberty afforded to normal prisoners. He was unable to work, earn gain time toward his release, watch television, associate with other prisoners, attend outdoor recreation in a congregate setting, attend meals with other prisoners, and visit the Law Library. He was not able to contact his parents by phone as he normally does weekly.

Doc. 1, pp. 8-9 (paragraph numbers omitted).

Plaintiff brings the following claims in his complaint. Plaintiff first claimed that the defendants violated his First Amendment rights by writing a false disciplinary report against him in retaliation for plaintiff's letter to the Department of Health, his contact with the Inspector General's Office or his administrative grievances. He next claims that

> Defendants violated Plaintiff's Fourteenth Amendment right to substantive due process by depriving Plaintiff of a fundamental constitutional right in a way that shocks the conscience. By producing and maintaining a false disciplinary report against Plaintiff, the Defendants denied him the limited liberty afforded prisoners, the right to be free from physical and emotional harm in confinement, the right to release early through gain time, and the rest of the injuries alleged [above].

Doc 1. p. 11.

Third, plaintiff claims that defendants violated his 14th Amendment right to the limited procedural due process in prison disciplinary proceedings set out in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) because of various alleged defects in the disciplinary reports and hearings. Finally, plaintiff claims that defendants violated his 14th Amendment right to procedural due process by convicting him of a falsified disciplinary report.

Plaintiff seeks recovery for the mental and emotional anguish he suffered as a result of the allegedly harsh conditions of disciplinary confinement, and for being required to spend 71 days more in prison than he otherwise would have without the disciplinary conviction. Plaintiff requests the following damages: "no less than $125,000 against each defendant in compensatory damages, and $125,000 against each defendant in punitive damages."

On November 9, 2011, the Magistrate Judge issued an order warning plaintiff that the facts presented in his complaint failed to state a viable claim for relief under § 1983 as to the named defendants. (Doc. 9). The Magistrate Judge provided plaintiff an opportunity to clarify his allegations in an amended complaint, but plaintiff has declined to amend. (Doc. 10). Based on a

second review of plaintiff's allegations, the Magistrate Judge concluded that plaintiff's complaint fails to state a plausible § 1983 claim, and that this case should be dismissed. The Report and Recommendation with these recommendation was entered as Doc. 11.

The Magistrate Judge first found that "plaintiff's allegations fail to raise plaintiff's conclusion of a retaliatory motive above the speculative level " because (1) there was no specific allegation that the Sapp and Abel were "aware of plaintiff's letter to the Department of Health, complaint to the IG's Office, or medical grievance against Nurse Cox" and (2) "plaintiff fails to allege facts from which it could reasonably be inferred that plaintiff's complaints about those other prison officials motivated Sapp and Abel to retaliate." Doc. 11, p. 9.

In so holding, however, the Report and Recommendation fails to consider the contemporaneous conversation of Officer Sapp and another officer, where they discuss that plaintiff "likes to write things up!" and had "already told me he was going to write his way out of this one" and that "he'll put a lawsuit on you!" These statements provide evidence that Officer Sapp was aware of plaintiff's previous written complaints and that the officer's disdain for these complaints was in his mind during the events taking place in this case. Additionally plaintiff alleges that he was questioned in Captain Abel's office about the letter to the Department of Health on August 17, 2008, and that questioning resulted in no consideration of the overcrowding discussed in the letter but did lead to a disciplinary report against plaintiff. Captain Abel was also relied upon as the basis of the drug test, but this fact was not disclosed to plaintiff until after the first disciplinary hearing. Thus, plaintiff plausibly alleges the causation element of a retaliation claim against both Officer Sapp and Captain Abel. However, this claim along with all of the others should be dismissed for different reasons.

First, with the exception of one claim, all of plaintiff's claims imply the invalidity of

plaintiff's disciplinary conviction on the re-written charge – a conviction that resulted in plaintiff losing gain time and "leav[ing] prison 71 days later than he would have otherwise." (Doc. 1, p. 11 ¶ 39).  In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held:

> [T]o recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87, 114 S. Ct. at 2372.  If the § 1983 action is brought prior to the invalidation of the challenged conviction or sentence, the action must be dismissed as premature. Id. at 487, 114 S. Ct. at 2372.  The Supreme Court has applied Heck to prisoners' claims challenging prison disciplinary actions.  Edwards v. Balisok, 520 U.S. 641, 643-649, 117 S. Ct. 1584, 1586-89, 137 L. Ed. 2d 906 (1997) (holding that Heck applies to claims for relief that necessarily imply the invalidity of disciplinary determinations affecting the duration of time to be served). Furthermore, Heck applies even though the prisoner seeks monetary damages and not the reinstatement of lost good-time credits flowing from the disciplinary action.  Id., 520 U.S. at 646. Simply put, if a judgment in plaintiff's favor would be "at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence" Muhammad v. Close, 540 U.S. 749, 754-55, 124 S. Ct. 1303, 1306, 158 L. Ed. 2d 32 (2004), plaintiff's claims must be dismissed unless plaintiff demonstrates that the disciplinary conviction has been invalidated.  Id.; *see also* Heck, 512 U.S. at 487, 114 S. Ct. at 2372.

     Here, the plaintiff admits that the second disciplinary finding has not been invalidated despite the plaintiff having two years of incarceration to attack the finding by habeas petition and

despite being made aware of the requirements of Heck in other cases. Doc. 11, p. 13. The fact that plaintiff is now released, and may not be able to rely on the habeas statute, is of no recourse to plaintiff. Heck itself directs that "the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." Heck, 512 U.S. at 490 n.10. Accordingly, the Court agrees with Magistrate Judge that all claims based on the second disciplinary report are barred at this time by Heck.

As intimated above, one claim by plaintiff addresses the first disciplinary report, which plaintiff did get overturned. Plaintiff complains that his due process rights were violated when he was not told that Captain Abel was the witness against him and he was denied Captain Abel's incident report prior to the first disciplinary report. Since plaintiff got this disciplinary finding overturned, he did not lose any gain time. The only hardship he suffered that he isolates as being caused by the first disciplinary report is 19 or 20 days in administrative confinement ""while waiting for a hearing and after the first report was overturned by the Warden," (doc. 1, p. 8 ¶ 31)."

The Eleventh Circuit has held that a Florida prisoner's confinement in administrative segregation for two months did not impose an atypical and significant hardship on the prisoner. Rodgers v. Singeltary, 142 F.3d 1252, 1253 (11th Cir.1998). In recent unpublished opinions, the court has held that a Florida prisoner's short sentences of disciplinary confinement did not trigger due process protections. Smith v. Regional Director of Florida Dep't of Corrections, No. 09–11443, 2010 WL 447014, at *3 (11th Cir. Feb.10, 2010) (affirming dismissal of prisoner's § 1983 claims challenging 15– and 30–day disciplinary confinements on due process grounds; plaintiff failed to allege any facts which could be liberally construed to show that the disciplinary

confinements were a major disruption to his environment as compared to placement in the general population); Shaarbay v. Palm Beach County Jail, No. 09–11294, 2009 WL 3401423, at *2 (11th Cir. Oct.23, 2009) (holding that State's placement of prisoner in disciplinary confinement for 30 days was neither "atypical" nor imposed a "significant hardship," and therefore did not constitute a due process violation.  After full consideration of plaintiff's lengthy description of his confinement, the Court finds no reason to distinguish plaintiff's disciplinary confinement experience from those of the prisoners in those cases.  Thus, his claim based on the confinement after his initial disciplinary hearing but before his second is barred by Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995).  Accordingly it is hereby

**ORDERED AND ADJUDGED**:

1. The Report and Recommendation of the Magistrate Judge is accepted and incorporated herein.

2. That plaintiff's retaliation claim is DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff's due process claims challenging the re-written disciplinary report and subsequent disciplinary conviction for refusing to submit to a substance abuse test are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), subject to plaintiff satisfying Heck's favorable termination requirement. Plaintiff's due process claim challenging the original disciplinary report and overturned disciplinary conviction for refusing to submit to a substance abuse test is DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii).

3. The clerk is directed to close the file.

**DONE AND ORDERED** this _26th_ day of September, 2012

                                                *s/Maurice M. Paul*
                                             Maurice M. Paul, Senior District Judge